OPINION
{¶ 1} On September 16, 2002, appellee, the Stark County Department of Job and Family Services, filed a complaint for temporary custody of Jesus (J.C.) Hines born February 12, 1993, Harry Hines born March 27, 1994, and Mario Hines born March 18, 1996, alleging the children to be neglected and dependent. Mother of the children is appellant, Starlette Blunt; father is Jeffrey Hines. An adjudicatory hearing was held on October 16, 2002. The parents entered an admission to dependency and the children remained in appellee's temporary custody.
 {¶ 2} A dispositional hearing was held on October 31, 2002. The parents were ordered to comply with the case plan. Temporary custody remained with appellee.
 {¶ 3} On August 3, 2004, appellee filed a motion for permanent custody. A hearing was held on October 28, 2004. By judgment entry filed November 3, 2004, the trial court granted appellee permanent custody of the children.
 {¶ 4} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 5} "The juvenile court erred in determining that reasonable efforts were made by job and family services to prevent the need for placement and/or to make it possible for the children to be placed in the custody of their mother/appellant."
 II {¶ 6} "The trial court erred in awarding permanent custody to job and family services; as job and family services failed to prove by clear and convincing evidence that the grant of permanent custody was in the best interests of the children and that the children could not or should not be placed with the mother within a reasonable period of time; and said decision was against the manifest weight and sufficiency of the evidence."
 I {¶ 7} Appellant claims the trial court erred in finding appellee had made reasonable efforts to reunite her and her children. We disagree.
 {¶ 8} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758.
 {¶ 9} R.C. 2151.419 governs hearings on efforts of agencies to prevent removal of children from homes. Subsection (A)(1) states the following:
 {¶ 10} "Except as provided in division (A)(2) of this section, at any hearing held pursuant to section 2151.28, division (E) of section 2151.31, or section 2151.314, 2151.33, or 2151.353 of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency or private child placing agency that filed the complaint in the case, removed the child from home, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. The agency shall have the burden of proving that it has made those reasonable efforts."
 {¶ 11} The gravamen of appellant's claim is that reasonable efforts were not expended in helping her maintain stable housing and receive counseling.
 {¶ 12} It would have been difficult to assist appellant in finding housing because during the last year she has lived in four different places in different counties. T. at 67, 84. As the docket indicates, it was difficult to serve her with notice of the six month review hearing. See, Failure of Service filed August 13, 2004.
 {¶ 13} As the trial court, the guardian ad litem and all counsel at the hearing admitted, the three children have various mental health problems and are challenging children to nurture and raise. The record is replete with the diagnosis of each child and the efforts made to seek continued help for them. T. at 43-50. Appellant voluntarily sought counseling with Cynthia Makita, a therapist. As appellee stated in its brief at 6, the fact that appellant "sought counseling on her own prior to being specifically referred to a particular counselor does not in any way demonstrate that the agency did not or would not facilitate counseling for Ms. Blunt."
 {¶ 14} Appellant also complains of appellee calling Carroll County Job and Family Services prior to the permanent custody hearing and making a report that appellant should be investigated. Appellant argued in her brief at 10 that this call "was for the sole purpose of defrauding the court into believing that Carroll County was having problems with Starlette and her family and thus gaining an unconscionable advantage in the permanent custody case." We disagree with this characterization.
 {¶ 15} Testimony referring to a concern from Carroll County was elicited by appellant's counsel on cross-examination of appellee's caseworker. T. at 96. It was appellant's counsel who admitted a letter from a Carroll County social service worker detailing her investigation and concerns regarding appellant's home. T. at 96-97, 119; State's Exhibit A.
 {¶ 16} Upon review, we find the trial court did not err in finding appellee made reasonable efforts. In fact, it was appellee that reunited appellant with her children after she had abandoned them for six years. T. at 69.
 {¶ 17} Assignment of Error I is denied.
 II {¶ 18} Appellant claims the trial court's decision to grant permanent custody to appellee was not in the children's best interests, and the decision was against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 19} R.C. 2151.414(E) sets out the factors relevant to determining permanent custody. Said section states in pertinent part as follows:
 {¶ 20} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353
of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 21} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 22} "(16) Any other factor the court considers relevant."
 {¶ 23} R.C. 2151.414(B) enables the court to grant permanent custody if the court determines by clear and convincing evidence that it is in the best interest of the child. R.C. 2151.414(D) sets out the factors relevant to determining the best interests of the child. Said section states relevant factors include, but are not limited to, the following:
 {¶ 24} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 25} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 26} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 27} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 28} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 29} Appellant argues the record as a whole does not support the trial court's decision, and evidence was presented that placement of the children could have been effectuated if more time had been afforded. Essentially, appellant presents a manifest weight of the evidence argument. Appellant points out she did not become involved in the case until ten months after its inception, after she requested visitation. We note appellant was represented by counsel prior to the October 16, 2002 adjudicatory hearing.
 {¶ 30} Ms. Makita, appellant's therapist, opined appellant could care for the children with help. T. at 130. Melissa Daley, the Executive Director of the Center for Child and Family Development, testified appellant could handle one or two of the children. T. at 153. The trial court specifically noted this testimony in its judgment entry of November 3, 2004 at findings of fact nos. 10, 11 and 12:
 {¶ 31} "Ms. Blunt receives SSI benefits based upon her intellectual limitations. Testing has shown her IQ to be in the range of 65-70. Her counselor, Ms. Mikita, indicates this to be in the mildly retarded range. Ms. Blunt exhibits diligence in working with her counselor and Ms. Mikita feels she cares well for the children of which she has custody. It is the opinion of Ms. Blunt's counselor that permanent custody of these children should not be given to JFS and that Ms. Blunt is capable of parenting them.
 {¶ 32} "The Court has reservations about accepting this unconditional professional opinion. Ms. Mikita has never seen Jesus, Harry, or Mario and her information concerning these children has been gained only from Ms. Blunt. This information has been extremely limited. She admits that she was not aware of the psychiatric diagnoses of the children until the day of the instant hearing.
 {¶ 33} "Melissa Daley is the executive director of The Child and Family Development Center, which is the treatment and foster care program caring for these children. Ms. Daley is well acquainted professionally with Ms. Blunt and her children. It is her opinion that Ms. Blunt has been diligent in anything asked of her. Despite this, it is her opinion that Ms. Blunt may be able to parent only Jesus at some time in the future. She sees no possibility of her caring for all three children."
 {¶ 34} We find the trial court's observations of the opinions espoused by Ms. Makita and Ms. Daley to take precedence over any observations of the testimony by this court because as the trier of fact, it is the trial court's duty to pass on credibility and reliability. State v. Jamison
(1990), 49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881.
 {¶ 35} No where in the record is there any evidence of appellant's ability to parent Harry. A liberal reading of the record points to the fact that appellant may be able to parent J.C. as she has a "special bond" with this child. T. at 132. Appellant's present marital situation and housing status negates against the placement of J.C. with her. According to appellant's own testimony, her current spouse has anger management problems and there have been past incidents of domestic violence involving a gun. T. at 68-69, 78. This is further demonstrated by State's Exhibit A wherein appellant's spouse appeared stern, agitated and demanding before a Carroll County social service worker and admitted the incidents of past domestic violence.
 {¶ 36} The stability of appellant's present home was a matter of concern as the children require structure and stability. T. at 64. Appellant's housing arrangement is not independent, and appellant pays over eighty percent of her monthly income on rent for this shared residence. T. at 69, 85. As stated supra, Ms. Makita, appellant's own witness, admitted appellant could not parent any of the children without help. T. at 130-131. Appellant testified she was been diagnosed as "mentally retarded * * * moderate retarded." T. at 85.
 {¶ 37} Although appellant has substantially completed the objectives of the case plan, the time pursuant to statute has run. The children have been placed in appellee's temporary custody since 2002, more than twelve of the last twenty-two months. R.C. 2151.414(B)(1)(d); In re YoungChildren, 76 Ohio St.3d 632, 1996-Ohio-45.
 {¶ 38} The evidence establishes appellant's housing and financial stability are inadequate, and she would need assistance in assuming the care of even one child.
 {¶ 39} Based upon the evidence and the report of the guardian ad litem, we find the decision to grant permanent custody to appellee to be supported by clear and convincing evidence and to be in the children's best interests.
 {¶ 40} Assignment of Error II is denied.
 {¶ 41} The judgment of the Court of Common Pleas of Tuscarawas County, Ohio, Juvenile Division is hereby affirmed.
By Farmer, J. Boggins, P.J. and Gwin, J. concur.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Tuscarawas County, Ohio, Juvenile Court Division is affirmed.